CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 24 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PETER O. ODIGHIZUWA, ) | |
|     Plaintiff, ) | Civil Action No. 7:06CV00185 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| WARDEN TRACY RAY, et al., ) | By: Hon. Glen E. Conrad |
|     Defendants. ) | United States District Judge |

The plaintiff, Peter O. Odighizuwa, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983 against the Warden at Red Onion State Prison, Tracy Ray; five correctional officers, Lieutenant Mullins, Lieutenant Younce, Lieutenant Rose, Sergeant Day, and Captain Taylor; and the prison's physician, Dr. Williams.[1] The case is presently before the court on the motion for summary judgment filed by Ray, Mullins, Younce, Rose, Day, and Taylor. For the reasons set forth below, the court will grant the defendants' motion.

## Factual and Procedural Backgound

Odighizuwa has been incarcerated at Red Onion since October of 2004. Odighizuwa alleges that soon after he arrived at the prison, he began to notice excessive amounts of dust in his cell. He alleges that since that time, he has been continuously exposed to excessive amounts of dust, despite being moved to a different cell. Odighizuwa also alleges that he has been exposed to other airborne irritants that are similar to "mace and/or pepper gas." He alleges that the dust and irritants have caused him to experience headaches, fatigue, itchiness, sneezing, chest pains, occasional vomiting, and emotional distress, and that he may experience health problems in the future as a result of being exposed to the irritants. Odighizuwa further alleges that despite

---

[1] By opinion and order entered June 9, 2006, the plaintiff's claim against Dr. Williams was dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

complaining about the irritants, the defendants have failed to move him to a clean cell or otherwise remedy the problem. Consequently, Odighizuwa contends that the defendants have violated the Eighth Amendment's prohibition against cruel and unusual living conditions.

To support his claim, Odighizuwa has submitted several bags of "dust" as exhibits. With his original complaint, Odighizuwa submitted an envelope labeled "airborn [sic] dust that plaintiff swept off his cell floor for over a 4 day period." The envelope contains two small bags. One bag contains a lint-like substance and hair. The other bag contains a fine, grainy substance. On May 11, 2006, Odighizuwa submitted two small bags containing substances that were allegedly swept up in his cell over a 24-hour period. As with the original exhibits, one bag contains a fine, grainy substance, and the other bag contains a lint-like substance and hair. On May 30, 2006, Odighizuwa submitted a small bag containing "two days of airborn [sic] dust." The bag contains a lint-like substance and hair. Additionally, on August 2, 2006, Odighizuwa submitted a small bag containing a "one week amount of the airborne dust that keeps pouring into plaintiff's cell non-stop." The bag primarily contains a lint-like substance and hair.

The defendants have now filed a motion for summary judgment, supported by affidavits and exhibits. The defendants contend that they have no reason to believe that Odighizuwa's health is being threatened by dust or irritants. Lieutenant Rose alleges that he regularly looks into Odighizuwa's cell, and that he has not noticed any unusual dust accumulation in the area. When Warden Ray received an inmate request form from Odighizuwa concerning dust and irritants in March of 2005, he promptly forwarded the complaint to the prison's institutional safety specialist, J. Marko. Marko indicates that he has personally inspected the ventilation system in Odighizuwa's cell, and that he has found no unusual substances. Although Odighizuwa has shown him a "large

2

bundle of lint" on a few occasions, Marko states that the lint appears to match the color of the state issued blanket or clothing. In January of 2006, Marko had an HVAC expert inspect the ventilation system in Odighizuwa's cell. The vents and system appeared normal. Marko emphasizes that each cell's vent filters are changed on a set schedule, and that the vents are vacuumed twice a year. Additionally, health and sanitation inspections are routinely conducted at the prison. From February 2005 to June 2006, the average score in the housing units was 100 percent.

Both Odighizuwa and the defendants have submitted copies of Odighizuwa's medical records. The medical records indicate that Odighizuwa was examined by Dr. Williams on February 8, 2005. During the examination, Odighizuwa reported that his mouth and eyes had been itchy and dry since he arrived at the prison, and that he had been sneezing a lot. The doctor prescribed a nasal spray to be used once daily for two months.

On February 28, 2005, Odighizuwa was seen by a nurse at his cell door, where he complained that the air was dusty, and that it was irritating his throat. Odighizuwa also presented a large handful of lint, and alleged that he was coughing up the substance at night. The nurse informed him that it is impossible to cough up lint, and noted that the lint appeared to be from his blanket. Odighizuwa became upset and told the nurse to "go away" if she did not believe him.

During a visit with Dr. Williams on April 11, 2005, Odighizuwa asked to be moved to another cell. Odighizuwa told the doctor that the air in his cell was toxic, that it was causing throat pain, and that he was struggling to breathe. When Dr. Williams tried to gain additional details about his chest and throat pain, Odighizuwa became agitated and angry, and asked to be returned to his cell.

On May 20, 2005, Odighizuwa advised Nurse Yates that he had been vomiting and that he had not been able to urinate. Yates directed him to drink clear liquids for twenty-four hours, and to notify someone if the vomiting continued. Another nurse returned to Odighizuwa's cell that same day. The nurse's examination notes indicate that Odighizuwa was resting on his bunk, and that he did not voice any complaints.

On June 29, 2005, Dr. Williams saw Odighizuwa at his cell for complaints of ringing in his left ear. Odighizuwa also complained of irritation to his throat and nose as a result of dust, and indicated that there was a large pile of dust on the floor. Dr. Williams noted that the vents in Odighizuwa's cell were blocked off, and that the substance on the floor was actually a pile of lint that had probably been picked from Odighizuwa's clothing. Dr. Williams also noted that Odighizuwa's ears were clear, and that he had no other symptoms.

On October 26, 2005, Odighizuwa was given Motrin for a headache. Nurse Yates noted that his respiration was even and unlabored, and that he showed no signs of distress.

The following day, A. McKinley, a psychological associate at the prison, attempted to perform a routine mental health assessment. McKinley noted that Odighizuwa appeared tense, and that he reported that his cell was "nasty." McKinley also noted that while Odighizuwa claimed that he was holding a pile of dust, the substance appeared to be lint from clothing.

On January 20, 2006, Odighizuwa was referred to the doctor, after a nurse observed him standing at his cell door with a wash cloth tied around his face and inserted in each nostril. Odighizuwa was subsequently examined by Dr. Ohai on January 25, 2006. At that time, Odighizuwa stated that his ears were ringing from an injury to his head, and that he needed to be referred to an ear, nose, and throat doctor. However, upon examining Odighizuwa, Dr. Ohai

4

determined that his complaints were inconsistent with the clinical findings, and that he did not need to be referred to a specialist. When Dr. Ohai informed Odighizuwa of his opinion, Odighizuwa became angry and threatened litigation.

McKinley observed Odighizuwa again on January 31, 2006. At that time, Odighizuwa reported that he was "okay," and that his only problem was the dust in his cell. McKinley noted that Odighizuwa presented a wad of lint.

McKinley attempted to perform another mental health assessment on March 10, 2006. However, her examination notes indicate that Odighizuwa was uncooperative, and that he had a washcloth on his face. McKinley noted that Odighizuwa "again presented some lint, apparently a new bundle of lint."

On May 7, 2006, Odighizuwa was examined at his cell for multiple complaints allegedly related to "airborne dust and mace or pepper spray in his cell." Odighizuwa reported that the irritants were causing nausea, stomach pain, chest pain, sneezing, and itchiness, and that he had been suffering from chest pain for a week. Odighizuwa appeared at his cell door with a wash cloth folded over his mouth and nose, and reported that dust was entering his cell through the ventilation system. Upon examination, the nurse noted that Odighizuwa's respiration was even and unlabored, and that he did not exhibit any facial grimacing, sneezing, itchiness, or teariness. Odighizuwa's vital signs and EKG results were normal.

Three days later, Odighizuwa complained of having itchy, watery eyes and a runny nose as a result of the dust in his cell. Nurse Adams' examination notes indicate that Odighizuwa was alert and oriented, and that his respiration was even and unlabored. The nurse also noted that he refused to have his vital signs taken. Odighizuwa was given an antihistamine to take for five days.

5

On May 19, 2006, Odighizuwa was seen by Nurse Sutherland for complaints of itchy, watery eyes, a scratchy throat, and fatigue. Odighizuwa also reported that he had a severe headache because his head had been hit against a wall. The nurse noted that his respiration was even and unlabored, and that he exhibited no facial grimacing. Odighizuwa was given Tylenol and referred to the doctor.

A doctor examined Odighizuwa on May 25, 2006. During the examination, Odighizuwa complained about the dust in his cell, but indicated that an antihistamine had helped his sneezing and itching. The doctor noted that Odighizuwa's ears, nose, and throat were clear, and that he should continue taking the antihistamine each day for three months.

Although Odighizuwa complained of chest pain on June 19, 2006, examination notes indicate that his respiration was even and unlabored, and that he showed no signs of distress. Odighizuwa's EKG results were normal.

## Standard of Review

Summary judgment is properly granted when "there is no genuine issue as to any material fact and the ... moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indust., Inc., 763 F.2d 604, 610 (4th Cir. 1985). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly

6

supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## Discussion

The Eighth Amendment to the United States Constitution protects inmates from cruel and unusual living conditions. Rhodes v. Chapman, 452 U.S. 337, 346-347 (1981). However, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement. Id. at 347. In order to state a claim of constitutional significance, a prisoner must satisfy both an objective and subjective component. See Rish v. Johnson, 131 F.3d 1092, 1096 (4th Cir. 1997). To satisfy the objective component, a prisoner is required to demonstrate an "extreme" deprivation. Id. Specifically, "the prisoner 'must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such harm resulting from the prisoner's unwilling exposure to the challenged conditions." Id. (quoting Strickler v. Waters, 989 F.2d 1375, 1381 (4th Cir. 1993) and citing Helling v. McMillian, 509 U.S. 25, 33-35 (1993)). Additionally, to satisfy the subjective component, the prisoner must allege facts which show that prison officials acted with "deliberate indifference." Id. at 1379. Deliberate indifference "requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm." De'lonta v. Angelone, 339 F.3d 630, 634 (4th Cir. 2003) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

7

Having reviewed the record, the court agrees with the defendants that Odighizuwa has failed to satisfy either component. First, Odighizuwa has failed to proffer sufficient evidence from which a reasonable jury could find that he has suffered a serious injury as a result of dust or irritants in his cell. The injuries of which Odighizuwa complains -- headaches, fatigue, itchiness, sneezing, chest pains, occasional vomiting, and emotional distress -- are not sufficiently serious to rise to the level of an Eighth Amendment violation. See Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999) (holding that an inmate failed to state a claim under the Eighth Amendment, since his complaints of breathing problems, chest pains, dizziness, sinus problems, headaches, and fatigue were "objectively speaking, relatively minor"); Oliver v. Deen, 77 F.3d 156 (7th Cir. 1996) (holding that an inmate failed to demonstrate a serious medical need for purposes of the Eighth Amendment, where the inmate alleged that exposure to environmental tobacco smoke was causing wheezing, shortness of breath, dizziness, and nausea); Lopez v. Robinson, 914 F.2d 486, 491 (4th Cir. 1990) (holding that there was insufficient evidence of a serious medical need, where an inmate alleged that he was suffering mental stress as a result of being in a cell with inadequate ventilation, and that the lack of ventilation was causing headaches and increased sinus problems). Moreover, Odighizuwa has provided no evidence, other than his personal beliefs, that the aforementioned injuries were actually caused by excessive dust or irritants in his cell. See Oliver, 77 F.3d at 160. Although Odighizuwa also contends that he is at risk of future harm as a result of dust and irritants, he has failed to produce any evidence to support his own conclusory assertions. Consequently, no reasonable jury could find that Odighizuwa faces an unreasonable risk of serious injury as a result of the challenged living conditions. See Helling (explaining that an Eighth Amendment claim of risk to future health "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and

8

the likelihood that such injury to health will actually be caused by exposure to [harmful substances].").

The court also concludes that Odighizuwa has failed to proffer sufficient evidence from which a reasonable jury could find that the defendants "actually [knew] of and disregard[ed] an objectively serious condition, medical need, or risk of harm." De'lonta v. Angelone, 339 F.3d at 634. It is undisputed that numerous prison officials, including Dr. Williams, have visited Odighizuwa's cell on multiple occasions, and that no unusual dust or irritants have been found.[2] Likewise, the ventilation system has been examined by both the institutional safety specialist and an HVAC expert, neither of whom detected any abnormalities. The court notes that prison officials have consistently allowed Odighizuwa to receive medical attention for his complaints, and that there is absolutely no indication that any physician or other health care provider has recommended removing Odighizuwa from his current cell. Consequently, the record does not support a finding that the defendants were both aware of and disregarded a serious injury or risk of serious harm.

### Conclusion

For the reasons stated, the court concludes that there is no genuine issue of material fact and that the defendants are entitled to summary judgment.[3] The Clerk is directed to send certified copies of this opinion and the accompanying order to the plaintiff and counsel of record for the defendants.

ENTER: This 24th day of October, 2006.

*/s/ Jerry Conrad*
United States District Judge

---

[2] Instead, prison officials have reported observing collections of "lint" in the plaintiff's cell. The officials' descriptions are consistent with the lint-like substances submitted by the plaintiff as exhibits.

[3] Having reached this decision, the defendants' motion to stay the case until Captain Taylor returns from active military duty, and the plaintiff's motion for reconsideration of the order denying his motions for preliminary injunction, will be denied as moot.

9